IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Larry Roper, | ) | |
| | ) | |
| | ) | C/A No. 6:11-2204-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| | ) | |
| TAP Pharmaceutical | ) | |
| Products, Inc.; and | ) | |
| Abbot Laboratories, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendant Abbot Laboratories' ("Abbot's") Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6), Fed. R. Civ. P, or alternatively a transfer of venue to the Northern District of Illinois. (Dkt. # 33). Plaintiff Larry Roper ("Plaintiff") filed a response opposing the motion. (Dkt. # 37). For the reasons set forth below, the court grants the motion to transfer.

**I. Facts/Background**

On May 5, 2006, Plaintiff was diagnosed with prostate cancer. Plaintiff decided to treat his cancer with radiation seeding. His urologist, Dr. Dennis Whatley prescribed Lupron injections to shrink the prostate to increase the effectiveness of the radiation seeding. Plaintiff states Dr. Whatley explained to him that the side effects of Lupron could include hot flashes, a reduction in the size of his testicles, and headaches, and that these side effects would reverse themselves within one year of his last injection. Plaintiff states Dr. Whatley did not tell him that rheumatoid arthritis was a potential side effect.

On May 26, 2006, Plaintiff alleges he received his first Lupron injection and thereafter he received a monthly injection until November for a total of seven shots. Plaintiff

underwent the radiation seeding in December 2006 and after three months his prostate-specific antigen ("PSA") numbers were substantially improved. Within five months of the last Lupron injection, Plaintiff alleges he began to experience significant joint pain and swelling. He visited his family doctor, Dr. Newman Harter, who diagnosed him with rheumatoid arthritis. Plaintiff states that he asked both Drs. Harter and Whatley if the arthritis was associated with his prostate treatment and he was told no.

Plaintiff alleges that sometime after November 24, 2008, he began conducting his own research as to whether his rheumatoid arthritis could be related to his Lupron injections and he found an Abbott fact sheet which stated that five percent of Lupron users develop rheumatoid arthritis. Plaintiff filed this complaint in state court on May 20, 2011, alleging six causes of action: 1) fraud, 2) negligent design and negligent failure to warn, 3) negligent misrepresentation, 4) product liability/design defect, 5) breach of express and implied warranties, and 6) fraudulent concealment. The action was removed to this court and Plaintiff thereafter was granted leave to file a second amended complaint to name the correct defendant.[1] Defendant Abbott then filed this motion to dismiss or, alternatively, transfer.

## II. Discussion

Defendant Abbott filed this motion seeking a dismissal based upon lack of personal jurisdiction and/or failure to state a claim. Alternatively, Abbott seeks a transfer to the Northern District of Illinois where Abbott's headquarters is located. Initially, the court notes that the other Defendant, TAP Pharmaceutical Products, Incorporated ("TAP"), was dissolved in 2008.

---

[1] When the action was removed from state court, Plaintiff had already amended his complaint once.

2

When a district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, a plaintiff must prove a prima facie case of personal jurisdiction. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). To determine whether plaintiffs have satisfied this burden, the court may consider the "pleadings, affidavits, and other supporting documents presented to the court" and must construe them in the light most favorable to plaintiff and draw all inferences in his favor. *Mylan Labs.*, 2 F.3d at 62.

A federal court may exercise personal jurisdiction over a "foreign corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting. Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Because South Carolina courts construe the South Carolina long-arm statute to extend to the outer reaches of the Fourteenth Amendment, the court's statutory inquiry merges with its constitutional inquiry. *See, e.g., Cockrell v. Hillerich & Bradsby Co.*, 611 S.E.2d 505, 508 (S.C. 2005). Under the constitutional inquiry, a court has personal jurisdiction over those persons with "sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Consulting Eng'rs*, 561 F.3d at 277 (internal quotation marks omitted).

To meet this burden, a plaintiff must demonstrate that the defendant is subject to either specific or general jurisdiction in South Carolina. *Dtex, LLC, v. BBVA Bancomer, S.A.*, 405 F.Supp.2d 639, 644 (D.S.C. 2005). Whether personal jurisdiction is general or specific depends upon the degree of defendant's contacts with the forum state. General personal jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic," thereby permitting the exercise of jurisdiction for actions unrelated to defendant's contacts with the state. *Helicopteros Nacionales de Colombia, S.A.*

3

*v. Hall*, 466 U.S. 408, 414–15 & n. 9 (1984).

A defendant is subject to specific personal jurisdiction when the suit arises out of or is related to the defendant's contacts with the forum. *Helicopteros Nacionales*, 466 U.S. at 414 & n. 8. In determining whether the due process requirements for specific personal jurisdiction exist, the court must consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotation marks omitted).

Defendant Abbott contends that this court lacks personal jurisdiction over it. Abbott states it owns no real estate, or manufacturing or distribution facilities in South Carolina, has no employees in South Carolina, and does not distribute or market products here. (Def.'s Mem. Supp. Mot. to Dismiss Attach. # 3- Decl. of Charles Santora ¶¶ 3, 5, 7). Plaintiff appears to concede that Defendant does not have the "continuous and systematic" contacts to confer general jurisdiction, and even if he did not concede this, the court finds the Defendant did not have such continuous or systematic contacts with South Carolina sufficient to support general jurisdiction. Accordingly, the court applies the three part test set out above to determine if specific jurisdiction is proper.

First, reviewing the Complaint, there are no allegations that Abbott itself conducted activities in the State or purposefully directed activities towards South Carolina. The only allegations in the Complaint regarding the personal jurisdiction of Defendant Abbott are that Abbott is an Illinois corporation with its principal place of business in Illinois. Plaintiff then alleges Abbott does business in Greenville, South Carolina, "by distributing the pharmaceutical drug Lupron *as a shareholder in TAP*. (Compl. ¶ 3(emphasis added).

4

However, shareholders are not automatically subject to personal jurisdiction in those forums where the corporation does business. *See Jemez Agency, Inc. v. CIGNA Corp.*, 866 F.Supp. 1340, 1348 (D.N.M. 1994) ("No one would seriously argue that an individual shareholder could, consistent with due process, be required to defend suit in a distant state merely because the corporation does business or committed torts there."). In *Springs Indus. v. Gasson,* 923 F.Supp. 823, 827 (D.S.C. 1996), the court found it had jurisdiction over a director of a company because "[a]t this stage of the proceedings, [Plaintiff] has alleged sufficient facts to show that [Defendant] was involved in the decision making which is causally related to its injury and that he was at least in part, the guiding spirit behind the wrongful conduct." *Id*. at 827. However, here, there are no allegations in the Complaint that Abbott was involved in TAP's decision making which is causally related to Plaintiff's alleged injury.

In its response to Abbott's motion to dismiss, Plaintiff contends that Abbott has minimum contacts with South Carolina due to its injection of a product into the stream of commerce. (Pl.'s Mem. Opp. Mot. to Dismiss. at 8). Plaintiff states that "[i]t is indisputable that an agent of the defendants manufactured the pharmaceutical drug Lupron and that the defendants themselves marketed and distributed the drug with the expectation that Lupron would be prescribed by medical doctors in the State of South Carolina for use by patients in the State of South Carolina." *Id*. at 5. Further, Plaintiff contends that TAP and Abbott made substantial revenue from Lupron. *Id*. Additionally, Plaintiff contends that Abbott was more that a mere shareholder in TAP and he asks the court to "exercise personal jurisdiction over Abbott based upon TAP's being an instrumentality and/or alter ego of Abbott." (Pl.'s Mem. Opp. Mot. to Dismiss at 8). Finally, Plaintiff contends that Abbott and Takeda America Holdings, Inc., entered into a joint venture when they formed TAP to market and distribute

5

Lupron and that "[a]t the time [he] was injected with Lupron, Abbott was a fifty (50%) percent owner of TAP and directed its operations." *Id*. at 9.

Initially, the court notes that the Supreme Court has rejected the exercise of jurisdiction where a defendant has merely placed a product into the stream of commerce. *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S.Ct. 2780, 2785 (2011)(plurality opinion). The plurality held that "the defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule it is not enough that the defendant might have predicted that its goods will reach the forum state." *Id*. at 2788. Therefore, "an intent to serve the U.S. market [does] not show . . . purposeful [ ] avail[ment]" of the a particular forum state. *Id.* at 2790.

More importantly, in this case, however, is that for the court to exercise personal jurisdiction over Abbott under any of Plaintiff's arguments, Plaintiff must make at least a prima facie showing that Abbott is an agent of TAP. Plaintiff argues Abbott owned fifty percent of TAP's stock, but as stated above stock ownership is insufficient to confer personal jurisdiction. *Harris v. Deere & Co.*, 223 F.2d 161, 162 (4th Cir.1955) (holding that personal jurisdiction was inappropriate in a tort case for a parent corporation, who maintained corporate formalities of its wholly-owned domestic subsidiary) (*citing Cannon Manu. Co. v. Cudahay Packing Co.*, 267 U.S. 333, 335 (1925) (finding that a foreign company that was the sole stockholder, exerted control both commercially and financially, but respected all the corporate formalities could not be subject to veil piercing for personal jurisdiction for a breach of contract claim)). *See e.g., Harris v. Option One Mortg. Corp.*, 261 F.R.D. 98, 110 (D.S.C. 2009) (refusing to pierce the corporate veil to allow plaintiffs to sue a fifth-tier parent company when some of the factors above were not satisfied). Furthermore, other than conclusory allegations regarding Abbott directing TAP's operations, there are no

6

factual allegations or evidence that support Plaintiff's contention that Abbott was the agent, instrumentality, or alter ego of TAP. Plaintiff has not shown Abbott purposefully availed itself of the privilege of conducting activities in the South Carolina. As Plaintiff has failed to meet the first prong of the three-part test for specific jurisdiction, the court need not discuss the remaining prongs.

Considering the pleadings, affidavits, and other supporting documents in the record, construing them in the light most favorable to Plaintiff, and drawing all inferences in his favor, Plaintiff has failed to make a prima facie showing of personal jurisdiction over Defendant Abbott. Having determined that this court lacks personal jurisdiction over Abbott, the court considers the alternative relief requested by Abbott, a transfer of this case to the Northern District of Illinois, to be appropriate. Accordingly, the court grants Abbott's request to transfer the case.

### III. Conclusion

Defendant Abbot's Motion to Dismiss (Dkt. # 33) is **GRANTED in part**. Defendant's Motion to Dismiss pursuant to Rule 12 (b)(2) or, Alternatively, Transfer is **GRANTED** and this action is transferred to the Northern District of Illinois. However, the court declines to rule on Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) and leaves this part of Defendant's Motion for decision by the transferee court.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
July 20, 2012